# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHANIE YOUNG,<br><br>                   Plaintiff,<br><br>v.<br>BRENDAN KENNEDY, CHRISTINE ST. CLARE, REBEKAH DOPP, MICHAEL AUERBACH, AND SOREN SCHRODER,<br><br>                   Defendants,<br><br>TILRAY, INC.,<br><br>                 Nominal Defendant | Case No.: 21-2827<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff by her undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

2. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.

3. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. The common stock of Nominal Defendant Tilray, Inc. ("Tilray" or "the Company") trades on the NasdaqGS, which is headquartered in this District.

## PARTIES

4. Plaintiff is, and has been continuously throughout all times relevant hereto, a Tilray shareholder.

5. Defendant Brendan Kennedy is President, Chief Executive Officer, and a director of the Company.

6. Defendant Christine St. Clare is a director of the Company.

7. Defendant Rebekah Dopp is a director of the Company.

8. Defendant Michael Auerbach is a director of the Company.

9. Defendant Soren Schroder is a director of the Company.

10. Nominal Defendant Tilray is a Delaware corporation and a party to the Merger Agreement. Tilray shares are traded on the NASDAQ under the ticker symbol "TLRY." The activities of Tilray alleged herein have been directed by the Individual Defendants who control Tilray by virtue of their positions as Directors of Tilray.

## FACTS

11. This is an action brought by Plaintiff against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company with Aphria, Inc. ("Aphria") (the "Proposed Transaction").

12. On December 15, 2020, the Individual Defendants caused Tilray to enter into an

Agreement and Plan of Merger (the "Merger Agreement") with Aphria. Pursuant to the terms of the Merger Agreement the Company's shareholders will receive 0.8381 of a share of Aphria common stock per share of Tilray owned (the "Merger Consideration").

13. On March 12, 2021, in order to convince Tilray's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

14. Plaintiff therefore asserts claims against the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin the Individual Defendants from taking any steps to consummate the Proposed Transaction until the material information discussed below is disclosed to Tilray shareholders before the vote on the Proposed Transaction. In the alternative, if the Proposed Transaction is consummated, the Plaintiff seeks to recover damages resulting from the Individual Defendants' violations of the Exchange Act.

15. Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor.

16. Tilray supplies high-quality medical cannabis products to thousands of patients in fifteen countries in five continents through Tilray's subsidiaries in Australia, Canada, Germany, Latin America and Portugal. Tilray also has agreements with pharmaceutical distributors. Tilray cultivates medical and adult-use cannabis in Canada and medical cannabis in Europe.

17. Aphria is a global cannabis-lifestyle consumer packaged goods company, operating in Canada, the United States, Europe and Latin America. Aphria cultivates, processes, markets and sells medical and adult-use cannabis, cannabis-derived extracts and derivative cannabis products in Canada under the Cannabis Act. Aphria also sells globally pursuant to applicable

international regulations. Aphria, through its SweetWater subsidiary, also manufactures, markets and sells alcoholic beverages in the United States.

18. On December 15, 2020, Tilray's Board caused the Company to enter into the Merger Agreement.

19. The Merger Agreement provides that Tilray will merge with and into Aphria with Aphria surviving as a wholly owned subsidiary of Tilray.

20. At the Effective Time (as defined in the Merger Agreement), and as a result of the Merger:

> [E]ach Aphria Share outstanding immediately prior to the Effective Time (other than Dissenting Shares held by Aphria Dissenting Shareholders who are ultimately determined to be entitled to be paid the fair value of their Dissenting Shares as determined in accordance with Article 4), shall be, and shall be deemed to be, transferred by the holder thereof to Tilray (free and clear of all Liens) in exchange for issuance of the Share Consideration.

21. The Merger Consideration is unfair because, among other things, the true value of Tilray is greater than the amount the Company's stockholders will receive under the Proposed Transaction.

22. Tilray shareholders therefore must receive the material information that the Individual Defendants have omitted from the Proxy Statement prior to the vote so that they can determine whether they should vote in favor or against the Proposed Transaction.

23. Section 5.1 of the Merger Agreement has a "non-solicitation" provision that bars Tilray from soliciting alternative proposals and restricts its ability to negotiate with potential buyers:

> Section 5.1 Non-Solicitation
>
> From the date hereof until the date that this Agreement is terminated pursuant to Article 7, except as expressly provided in this Article 5, neither Party shall, directly or indirectly, do or authorize or permit any of its Representatives to do, any of the

following: (a) solicit, initiate or knowingly encourage or otherwise facilitate (including by way of furnishing or providing copies of, access to, or disclosure of, any confidential information, properties, facilities, books or records of a Party or any Subsidiary) any Acquisition Proposal in respect of such Party or any inquiries, proposals or offers relating to any Acquisition Proposal or that could reasonably be expected to lead to an Acquisition Proposal in respect of such Party; (b)enter into, engage in, continue or otherwise participate in any discussions or negotiations with any person (other than the other Party hereto) regarding any Acquisition Proposal in respect of such Party or any inquiries, proposals or offers relating to any Acquisition Proposal or that could reasonably be expected to constitute or lead to an Acquisition Proposal in respect of such Party; (c) make a Change in Recommendation;(d)accept, approve, endorse or recommend, execute or enter into, or publicly propose to accept, approve, execute or enter into, any letter of intent, agreement in principle, agreement, arrangement, offer or understanding in respect of an Acquisition Proposal (other than a confidentiality and standstill agreement contemplated under Section 5.3(1)).

24. Section 7.3 of the Merger Agreement further obligates Tilray to pay up a termination fee up to $65,000,000 if the Merger Agreement is terminated by Tilray. It also restricts Tilray from obtaining a superior offer. Such a termination fee is improper, excessive and unduly restrictive to Tilray's ability to consider other offers.

25. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26. The Proxy Statement omits material information with respect to the Proposed Transaction, which makes the Proxy Statement false and misleading, including material information regarding the financial projections..

27. The Proxy omits crucial information regarding five sets of financial projections disclosed in the section of the Proxy called Certain Tilray Forecasts.

28. The five types of financial projections not set forth in the necessary detail are: (1) Tilray Management Financial Projections; (2) Aphria Management Projections used by Cowen; (3) Tilray Adjusted Aphria Management Projections used by Cowen; (4) Aphria Management Projections used by Imperial; and (5) Certain Pro Forma Projections used by Imperial.  See Proxy

at 90-94.

29. In each of these five sets of projections, the Proxy fails to disclose the figures underlying the inputs used to calculate Unlevered Free Cash Flow ("UFCF"), EBIT and Adjusted EBITDA. Id. The materiality of these calculations is demonstrated by review of the Tilray Management Financial Projections, wherein Imperial and Cowen and Imperial used two different methods to calculate UFCF. These different methods resulted in material differences in their view of the Company's UFCF for fiscal years 2020 through 2023. Id. at 92.

30. The Proxy also fails to disclose Net Income projections, even though the five sets of projections referenced above use Net Income in calculating EBIT and Adjusted EBITDA. Id. at 90-94. By disclosing certain projections in the Proxy and omitting the Net Income projections, Defendants have made the projections on pages 90 to 94 of the Proxy materially incomplete and misleading. Accordingly, the valuation analysis of Tilray and Aphria is misleading and incomplete. The omitted Net Income projections are necessary for a shareholder to fully and accurately understand Tilray's and Aphria's projections and value.

31. The Proxy also omits material information regarding Cowen and Imperial's respective financial analyses for the Proposed Transaction.

32. The Proxy discloses that Cowen utilized the Wall Street Projections for both Tilray and Aphria, and the Projected Synergies prepared by Tilray's management, in rendering its fairness opinion. Id. at 78. However, neither of these projections are disclosed. Moreover, as to the Projected Synergies, Defendants only provided a summary and failed to disclose the actual projections. Id. at 94-95.

33. As to the *Analysis of Selected Publicly-Traded Companies*, the Proxy fails to disclose the individual multiples observed for each of the selected companies listed. Id. at 79-80.

The Proxy also omits the inputs and assumptions justifying Cowen's selection and use of the two provided range of multiples: (i) 5.5x to 8.0x; and (ii) 3.0x to 5.0x. Id. at 80.

34. For *Tilray's Discounted Cash Flow Analysis*, the Proxy also fails to disclose the inputs and assumptions justifying Cowen's selection of the discount rates ranging from 10.0% to 12.0%, based on an estimate of Tilray's weighted average cost of capital ("WACC"). Id. at 81. The Proxy also omits the inputs and assumptions justifying the selected Adjusted EBITDA multiples of 15.0x to 20.0x. Id.

35. As to the *Aphria Discounted Cash Flow Analysis* based on Aphria Management Projections, the Proxy fails to disclose the inputs and assumptions justifying Cowen's selection of the discount rates which range from 8.5% to 10.5%, based on an estimate of Aphria's WACC. Id. The Proxy further omits the inputs and assumptions justifying the selected Adjusted EBITDA multiples of 15.0x to 20.0x. Id.

36. As to the Aphria Discounted Cash Flow Analysis Based on Aphria Management Projections as Adjusted by Tilray Management, the Proxy likewise omits the inputs and assumptions justifying Cowen's selection of the discount rates ranging from 8.5% to 10.5%, based on an estimate of Aphria's WACC. Id. The Proxy further omits the inputs and assumptions justifying the selected Adjusted EBITDA multiples of 15.0x to 20.0x. Id.

37. These various inputs are material to the Company's shareholders, and Defendants' failure to disclose them makes the summary of Cowen's three Discounted Cash Flow Analyses incomplete and misleading.

38. The Company's shareholders cannot evaluate for themselves the reliability of Cowen's Discounted Cash Flow Analyses without the omitted information, nor can they make an informed decision of whether the implied equity value ranges reflect the true value of the Company

and Aphria, or were the result of an unreasonable judgment by Cowen. Therefore, the lack of this material information prevents the shareholders from making an informed decision regarding whether to vote for or against the Proposed Transaction.

39. As to the Current Trading Metrics Analysis, the Proxy fails to disclose Tilray's total debt and the number of shares outstanding as of December 14, 2020. Id. at 83.

40. The Wall Street Analyst Share Price Targets Analysis also omits the twenty-two total research analysts Cowen observed, and the individual metrics observed for each of those analysts. Id. at 84.

41. The Proxy further notes that Imperial "reviewed certain publicly available research reports," yet the Proxy fails to disclose the sources of those reports. Id. at 85.

42. As to the *Comparable Companies Analysis*, the Proxy omits the individual multiples observed for each of the selected companies. Id. at 87-88.

43. As to the *Precedent Transactions Analysis*, the Proxy fails to disclose the individual multiples observed by Cowen for each of the selected transactions. Id. at 88.

44. As to the Discounted Cash Flow Analysis for both Tilray and Aphria, the Proxy fails to disclose the following information: (i) the inputs and assumptions justifying Imperial's application of a range of TEV/EBITDA multiples of 20x to 22x for Tilray, and 18x to 20x for Aphria; (ii) the inputs and assumptions justifying Imperial's application of a range of perpetuity growth rates from 8.5% to 9.5%; and (iii) the inputs and assumptions justifying the selection of a discount rate of 12.5%, based upon the WACC for Aphria and Tilray. Id. at 89.

45. As to the *Securities Analysts' Price Targets Analysis*, the Proxy omits the names of the six equity analysts observed by Imperial. Id. at 90.

46. As to Jefferies' *Discounted Cash Flow Analysis of Aphria Stand-Alone*, and of

Aphria Shareholders' Share of the Combined Company at the Exchange Ratio Analysis, the Proxy Statement omits: (i) the individual inputs and assumptions justifying the range of discount rates of 10.0% to 12.0% and 9.8% to 11.8%, (ii) Aphria's and the combined company's estimated WACC, (iii) the range of Aphria's terminal year values, (iii) Jefferies' full basis for applying exit multiples ranging from 10.5x to 14.5x, and (iv) estimates of the tax benefits from non-capital loss carry forward as provided by Aphria management.

47. As to Jefferies' *Discounted Cash Flow Analyses of Tilray Stand-Alone and Tilray Including Synergies*, the Proxy Statement omits: (i) the individual inputs and assumptions justifying the range of discount rates of 10.0% to 12.0% and 9.8% to 11.8%, (ii) Tilray's and the combined company's estimated WACC, (iii) the range of Tilray's terminal year values, (iii) Jefferies' full basis for applying exit multiples ranging from 10.5x to 14.5x, and (iv) estimates of the tax benefits from non-capital loss carry forward as provided by Tilray management.

48. As to Jefferies' *Selected Public Companies Analysis*, the Proxy Statement omits the individual metrics for each company observed. This information must be disclosed to make the Proxy Statement not materially misleading to Tilray stockholders and provide stockholders with full and relevant information in considering how to vote.

49. The omission of the above-referenced information therefore makes the Proxy materially incomplete and misleading. This is a violation of the Exchange Act. Unless Defendants make a supplemental disclosure of the above-referenced material information prior to the Shareholder Vote on the Proposed Transaction, Plaintiff and other shareholders will be unable to make an informed decision regarding whether to vote their shares for or against the Proposed Transaction. Plaintiff and the other shareholders are therefore also threatened with irreparable harm, which in turn warrant the injunctive relief requested herein.

## COUNT I

### (Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

52. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53. Defendants issued the Proxy Statement with the express intention of soliciting shareholders to vote for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the issuance of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

54. Defendants accordingly made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants,

10

by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

55. The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56. The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

57. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading.

58. The Individual Defendants were required to be carefully attend to the procedures followed in preparing the Proxy Statement and review it carefully before it was issued, to confirm that there are no material misstatements or omissions.

59. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were therefore negligent in preparing and reviewing the Proxy Statement.

60. The Individual Defendants were also negligent in choosing to omit material information from the Proxy Statement or failing to observe the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors.

61. The Individual Defendants were especially negligent in that each of them was intimately involved in the negotiations culminating in the signing of the Merger Agreement and the preparation of Tilray's financial projections.

62. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

63. Plaintiff has no adequate remedy at law.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

64. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65. The Individual Defendants acted as controlling persons of Tilray within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tilray, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

66. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.

68. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

69. As set forth above, each of the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.

72. By virtue of their positions as controlling persons, these Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

73. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

74. Plaintiff has no adequate remedy at law.

**COUNT III**

**(Against the Individual Defendants for Breach of Fiduciary Duty)**

75. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

76. As directors and/or officers of the Company, the Individual Defendants owed Plaintiff and all Tilray shareholders a fiduciary duty of candor, which required them to disclose fully and fairly all material information within their possession and control when they request shareholders to act, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

77. The Individual Defendants breached their duty of candor by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

78. The misrepresentations and omissions in the Proxy are material, and Plaintiff and the other shareholders will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.

79. Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

  C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 1, 2021

             **GAINEY McKENNA & EGLESTON**

             By: */s/ Thomas J. McKenna*
               Thomas J. McKenna
             Gregory M. Egleston
             501 Fifth Avenue, 19th Floor
             New York, NY 10017
             Telephone: (212) 983-1300
             Facsimile: (212) 983-0383
             Email: tjmckenna@gme-law.com
             Email: gegleston@gme-law.com

             ***Attorneys for Plaintiff***